Eryn Karpinski Hoerster, OSB #106126
E-Mail: ehoerster@gsblaw.com
Garvey Schubert Barer
Eleventh Floor
121 SW Morrison Street
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

Attorneys for Educational Credit Management Corporation

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re<br><br>MARK EDWARD BERRY<br>VALERIE JOAN BERRY,<br><br>    Debtors. | Bankruptcy No. 13-37862-rld7<br><br>Adversary Case No. 4-03024-rld |
|---|---|
| MARK EDWARD BERRY<br>VALERIE JOAN BERRY,<br><br>    Plaintiffs,<br><br>v.<br><br>EDUCATIONAL CREDIT MANAGEMENT CORPORATION and U.S. DEPARTMENT OF EDUCATION,<br><br>    Defendants. | **TRIAL MEMORANDUM** |

EDUCATIONAL CREDIT MANAGEMENT CORPORATION, a Minnesota private, non-profit corporation ("ECMC"), submits the following trial brief in the above-captioned proceeding.

## I.    INTRODUCTION

Plaintiff Valerie Berry and her husband, Mark Berry, were granted a Chapter 7 bankruptcy discharge of qualifying debts on June 4, 2014. In this adversary proceeding, both debtors seek to

Page 1 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

Case 14-03024-rld    Doc 42    Filed 04/08/15

discharge their student loan debts owed to ECMC and the U.S. Department of Education. Ms. Berry owes student loan debt to both ECMC and the Department of Education, while Mr. Berry owes student loan debt only to the Department of Education. This Memorandum addresses only the debt owed to ECMC by Ms. Berry.

Ms. Berry took classes at several Oregon schools between 2005 and 2012, financing her education solely through original disbursements of over $66,000 in student loans. Because Ms. Berry has made no or negligible payments on her student loan debt, Ms. Berry now owes much more on these loans, including interest.[1] Of her total outstanding student loan debt, over $32,000 is now owed to ECMC as current guarantor of eight loans (the "ECMC Loans") taken out between 2007 and 2008 while Ms. Berry attended courses at Central Oregon Community College and Chemeketa Community College. Ms. Berry graduated with an AAS degree in accounting in 2011.

On December 23, 2013, Debtor filed for bankruptcy protection under Chapter 7 seeking an order discharging debts totaling $291,466.09,[2] including collateral and debts excepted from discharge. Although there appears to be addition errors in Debtors' Schedule F, the Berrys sought discharge of approximately $34,810 in credit card, medical and dental, and personal loan debt. An Order of Discharge was entered June 4, 2014, stating: "Claims scheduled to be discharged without payment (w/out deducting the value of collateral or debts excepted from discharge): $291,466.09."[3]

The Debtor is not entitled to a discharge of the ECMC Loans under the controlling *Brunner* test. Ms. Berry has the sole burden to prove that she qualifies for the discharge of her student loans due to an "undue hardship." ECMC, through discovery, has found that the Berrys live a comfortable

---

[1] The Department of Education alleged in its Answer that Mr. Berry owes an additional $53,396.74 in student loan debt on his own account.

[2] It appears that Debtors' Schedule F grossly overstates the amount of Debtors' unsecured non-priority claims. The individual subtotals of the seven pages of Schedule F amounts to $154,166.10, including $119,356.09 in student loan debt, while the "total" listed on the seventh page of Schedule F is $206,086.09, a difference of $51,920 that is unexplained in the bankruptcy petition.

[3] $291,466.09 is the combination of the overstated $206,086.09 from Schedule F, $55,500 in mortgage debt, and a $29,880 child support debt owed by Mr. Berry.

Page 2 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor
121 s.w. morrison street
portland, oregon 97204-3141
503 228 3939*

lifestyle. Mr. Berry earns over $5,000 gross wages per month on average. Ms. Berry has only been employed briefly 3 times over the last 5 years. Ms. Berry admits repaying her student loans has not been a priority, and that there are places in her life where she could cut back on expenses (cell phone, cable, supporting her adult children) in order to improve her financial situation and allow for some payment on her loans.

Further, Ms. Berry cannot prove prong two of the *Brunner* analysis, the future inability to pay. Ms. Berry has been capable of returning to work. There is simply no argument that repayment of their student loans will be an undue hardship.

Finally, as to prong three, Ms. Berry has not exhibited a good faith effort to repay her student loans when she has spent much of their disposable income to supporting her adult daughter's shopping sprees, rather than paying back her student loans.

Under these facts the US taxpayer should not be asked to shoulder the burden of paying back Ms. Berry's student loans – the same loans that have, and will continue to, provide a comfortable lifestyle to the Debtors.

## II. FACTUAL SUMMARY

**A. The ECMC Loans:**

1. The ECMC Loans may be summarized as follows:

| Loan Type | Total Disb Amount | Disb Date | Principal Balance | Int. Balance | Total Balance[4] | Int. Rate |
|---|---|---|---|---|---|---|
| Stafford Sub | 656.00 | 4/13/2007 | 705.34 | 50.29 | 755.63 | 6.8% |
| Stafford Unsub | 1,000.00 | 4/13/2007 | 1,521.41 | 108.48 | 1,629.89 | 6.8% |
| Stafford Sub | 3,500.00 | 4/14/2008 | 3,763.09 | 268.33 | 4,031.42 | 6.8% |
| Stafford Unsub | 4,000.00 | 4/14/2008 | 5,883.18 | 419.50 | 6,302.68 | 6.8% |
| Consolidation | 5,136.50 | 2/8/2007 | 5,786.86 | 435.74 | 6,222.60 | 7.125% |
| Consolidation | 5,311.95 | 2/8/2007 | 8,407.92 | 633.10 | 9,041.02 | 7.125% |

---

[4] Per the 4/1/2015 Borrower Snapshot.

Page 3 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

| Loan Type | Total Disb Amount | Disb Date | Principal Balance | Int. Balance | Total Balance[4] | Int. Rate |
|---|---|---|---|---|---|---|
| Stafford Unsub | 2,000.00 | 3/2/2007 | 3,081.95 | 211.16 | 3,293.11 | 6.8% |
| Stafford Sub | 1,312.00 | 3/2/2007 | 1,414.33 | 96.90 | 1,511.23 | 6.8% |
| | $22,916.45 | | $30,564.08 | $2,223.50 | $32,787.58 | |

**B.  The Bankruptcy Cases:**

1.  The Debtors filed for bankruptcy protection under chapter 7 in December of 2013, and received a discharge on June 4, 2014.  Although the discharge order granted discharge of eligible debts within $291,466.06 of combined debt, the vast majority of this total debt is either student loans ($119,356.09); secured mortgage debt ($55,000); a non-dischargeable child support obligation ($29,880); and $51,920 in apparent mathematical errors.  At the time of their discharge, Debtors owed $34,810 in other, dischargeable consumer debt.

2.  The Plaintiffs filed this adversary proceeding on February 3, 2014.

**C.  Mr. and Mrs. Berry:**

1.  Ms. Berry is 51 years old, and Mr. Berry is 46. They have 1 dependent daughter and 1 dependent grandchild according to their 2014 tax return.  However, at the time of their deposition on November 28, 2014, the Berrys disclosed that they have no dependents living with them.

2.  Ms. Berry's education may be summarized as follows:

| School | Year |
|---|---|
| Trend College | 1985 |
| Central Oregon | 2005-2011 |
| Chemeketa | 2010 |
| Portland Community College | 2009-2011 AAS in Accounting |
| Eastern Oregon University | 2012 |

3.  Ms. Berry's interrogatory responses list bipolar disorder, fibromyalgia and anxiety as conditions affecting her ability to repay her student loans.  At her deposition, she also stated that she suffers from sleep apnea and degenerative disc problems, and was going to have surgery on her back. However, it does not appear that Ms. Berry is under the care of a mental health provider – none of the

Page 4 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

Case 14-03024-rld    Doc 42    Filed 04/08/15

1  three medical providers listed in her interrogatory responses are mental health professionals.
2  Furthermore, she refused to disclose any records to substantiate her mental or physical health
3  disorders. Although the Berrys will attempt to show that they have substantial medical costs, they
4  have failed to provide any invoices showing actual medical treatment or pharmaceutical costs, recent
5  bank statements showing payments for medical care, or any insurance policies showing deductibles
6  or coverage limits that would show actual out-of-pocket expenses for Ms. Berry's medical treatment.

    4.   Mr. and Mrs. Berry own their home which is located at 1502 NW Studebaker Drive,
Prineville, Oregon 97754. At the time of their bankruptcy filing, they had two mortgages on the
property, totaling $55,500. However, one of the two mortgages (for $2,000) has likely been paid off
based on $192 monthly payments. Although their bankruptcy petition lists monthly mortgage
payments of $1,100, the Springleaf Financial Services loan modification documents produced in
discovery show that until December 1, 2015, their monthly mortgage payment will be $600.15
inclusive of property taxes and homeowners insurance. Under the terms of the 2012 modification, it
is set to increase by approximately $140 per month on December 1, 2015. However, a recently
produced SPS Portfolio Servicing, Inc. mortgage statement produced as part of Debtors' trial exhibits
shows that their monthly payment, inclusive of hazard insurance and property taxes, totals $835.98.
Regardless of which is correct, there is a large discrepancy between $1,100 – exclusive of insurance
and property taxes – and $600 or $835 per month. Debtors' obfuscation of their mortgage
obligations, like the misleading total debt reported in their bankruptcy petition, suggests that Debtors'
position about their financial picture and ability to repay their student loans is not credible.

    5.   Ms. Berry does not currently work outside the home and has admitted that she is not
looking for work outside the home.

    6.   The history of the federal tax returns (joint returns) filed by Mr. and Ms. Berry may be
summarized as follows:

| Year | Wages, salaries etc. | Refund |
|------|----------------------|--------|
| 2014 | $76,103              | $1,710 |

Page 5 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

| 2013 | $83,397 | $3,119 |
| 2012 | $81,305 | $15,927 |
| 2011 | $138,064[5] | $12,516 |
| 2010 | $85,343 | $6,438 |
| 2009 | $74,072 | $7,356 |

7. Mrs. Berry's recent employment history may be summarized as follows:

| Employer | Period | Income | Role | Notes |
|---|---|---|---|---|
| Central Oregon Truck Company | July – September 2009 | $12/hour | Data entry | Let go after 90 days – not fast enough |
| USPS | June – August 2012 | $9.45/hour | | Quit – cost more to commute than she was earning |
| Best Western | September 2012-December 2013 | $10/hour | Front Desk Clerk | Let go – said she had a "poor attitude" |

8. Mr. and Ms. Berry reported in their bankruptcy Schedule J dated December 23, 2013, that they spend an average of $3,176 per month on household expenses. Documents produced in discovery, in addition to Ms. Berry's admissions at her deposition, show that hundreds of dollars are spent by Mr. and Ms. Berry each month on discretionary items and luxuries which are not part of a minimal standard of living. For example, the Berrys often spend $350 or $450 per month for a 9-line cellphone plan. In any given month, they could spend over $400 on miscellaneous, non-essential items such as Amazon/Kindle purchases and gifts. They often spend an additional $100 per month on pet expenses.

**D.  Student Loan Debt Management:**

10. Federally backed student loans have very flexible repayment options. As there is not sufficient space here to describe the various programs for debt management in great detail, the following is pertinent to the ECMC Loans:

Loan Consolidation: Typically, a student loan borrower with more than one student loan consolidates those loans into one new loan for ease of debt management; lower monthly payments,

---

[5] Includes $49,832 from "pension" which Ms. Berry claims they used to purchase the mobile home in which they are currently living.

Page 6 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

Case 14-03024-rld    Doc 42    Filed 04/08/15

streamlining repayment, extending terms of repayment. While Mr. and Ms. Berry currently have FFELP consolidation loans, they may still consolidate again through the William D. Ford Direct Loan Program ("Direct").

<u>Flexible repayment</u>: Includes various repayment schedules which generally assign from 10 to 25 years to repay the loan, depending on which repayment plan is appropriate to meet the different needs of the individual borrower: Standard, Extended, Graduated, and Income Based Repayment ("IBR"). Under IBR, the required monthly payment is capped at an amount that is intended to be affordable based on income and family size. A borrower is eligible for IBR if the monthly repayment amount under IBR will be less than the monthly amount calculated under a 10-year standard repayment plan. Most borrowers whose total loan balance exceeds their annual earnings will be deemed eligible. Typically, if a borrower earns less than 150% of the poverty level for his or her family size, the IBR payment will be $0. The IBR payment is recalculated annually. Borrowers who elect the IBR must sign a consent form authorizing the disclosure of their tax information and must recertify their family size on an annual basis. A borrower may contact their lender at any time if they experience a change in financial circumstances that could impact their required IBR payment.

<u>Debt Cancellation</u>: This occurs if the borrower dies or is totally and permanently disabled. If a borrower repays under the IBR plan for 25 years and meets other requirements he or she may have any remaining balance of the loan(s) cancelled. Additionally, if a borrower works in public service and she has a reduced loan payment through IBR, the remaining balance after ten years in a public service job could be cancelled through the Public Service Loan Forgiveness ("PSLF") program. Under PSLF, borrowers who continuously work full-time in any of a wide range of "public service" jobs may have their loans forgiven after only 10 years of timely payments.

<u>Postponement of Payments</u>: Deferment and forbearance of student loan payment may also be available (for some, interest is subsidized).

11. If this adversary action were to be dismissed, or if at trial it is ruled that the ECMC Loans are not dischargeable and the ECMC Loans were put back into repayment, Mr. and Ms. Berry

Page 7 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eleventh floor
121 s.w. morrison street
portland, oregon 97204-3141
503 228 3939

Case 14-03024-rld    Doc 42    Filed 04/08/15

1 could use the debt management tools made available to them including the IBR or they could
2 reconsolidate the ECMC Loans into Direct, obtaining Direct Consolidation Loans.

### III.     ARGUMENT

**A.     <u>The Debtors Cannot Meet the Exacting Burden of the "Undue Hardship" Standard</u>.**

The dischargeability of student loan obligations in conjunction with Chapter 7 bankruptcy proceedings is governed by 11 U.S.C. § 523(a)(8), which excepts student loans from discharge in a Chapter 7 bankruptcy unless excepting the loan from discharge "would impose an undue hardship on the debtor and the debtor's dependents." Congress did not define the term "undue hardship," but courts have developed a test to reflect Congress's intent of making the discharge of a student loan more difficult than that of an ordinary debt.

Like the majority of federal appellate courts, the Ninth Circuit has adopted the Second Circuit's three-part *Brunner* test for determining whether an undue hardship exists. *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir. 1998) (adopting *Brunner v. N.Y. State Higher Educ. Serv. Corp. (In re Brunner)*, 831 F.2d 395 (2d Cir. 1987)). Under the *Brunner* test, to establish an undue hardship, the debtors must prove that (1) they cannot maintain, based on current income and expenses, a minimal standard of living for themselves or their dependents if forced to repay the loan(s); (2) additional circumstances exist indicating that the inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period; and (3) they have made good faith efforts to repay the loans. *Brunner*, 831 F.2d at 396; *Pena*, 155 F.3d at 1111.

Debtors bear the burden of proof with respect to each element of the *Brunner* test. *Refino v. United States of Am. (In re Refino)*, 245 F.3d 1083, 1087-88 (9th Cir. 2001) ("If the debtor fails to satisfy any one of these requirements, 'the bankruptcy court's inquiry must end there, with a finding of no dischargeability.'"). Specifically, it is incumbent upon a debtor to present factual evidence establishing each element of the *Brunner* test by a preponderance of the evidence. *Levernier v. Educ. Credit Mgmt. Corp. (In re Levernier)*, 307 B.R. 684, 688 (C.D. Cal. 2004) (citing *In re Pena*, 155

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

F.3d at 1112). Importantly, if the debtor fails to meet his or her burden, the burden of production or persuasion never shifts to the student loan creditor. *Rifino*, 245 F.3d at 1088; *Levernier*, 207 B.R. at 688. Here, given the facts available to the Debtors, they simply cannot meet their burden on a single prong.

### (a) Prong One: The Debtors Can Maintain a "Minimal Standard of Living" While Repaying their ECMC Debt.

The first element of the *Brunner* test requires a debtor seeking a bankruptcy discharge of his or her student loans to demonstrate that he or she cannot maintain a "minimal standard of living" if required to repay the loan. *Brunner*, 831 F.2d at 396. Under this prong, bankruptcy courts consider whether debtors have maximized their income and minimized their expenses. *United Student Aid Funds, Inc. v. Nascimento* (*In re Nascimento*), 241 B.R. 440, 445 (9th Cir. B.A.P. 1999) ("The proper inquiry is whether it would be 'unconscionable' to require the Debtor to take steps to earn more income or reduce her expenses."). In conducting this analysis, the Court must exclude claimed expenses if they are unnecessary to maintaining a minimal standard of living. *Berchtold v. Educ. Credit Mgmt. Corp. (In re Berchtold)*, 328 B.R. 808, 814 (D. Idaho, 2005).

With Mr. Berry's take-home income alone, Debtors have plenty of money to cover their expenses and also make substantial payments on their student loan debt. As will be shown at trial, the Berrys' current budget is misleading. It purports to show $1,297.48 in monthly mortgage, insurance, and property tax payments. However, the Berrys were granted a loan modification on their mortgage in 2012, and currently owe between $600 and $937.57 inclusive of all insurance and property tax, including what appears to be excess property and flood insurance coverage. At the very minimum, this discrepancy leaves an additional $359.01 per month that could be used to pay student loans.

Debtors have also failed to maximize their income. On top of their actual income, under the *Brunner* analysis, Ms. Berry's potential income should be added to their actual income. Using Ms. Berry's income from 2013, she could be making an additional $17,000 per year. There will be no

Page 9 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor
1 2 1   s . w .   m o r r i s o n   s t r e e t
p o r t l a n d ,   o r e g o n   9 7 2 0 4 - 3 1 4 1
5 0 3   2 2 8   3 9 3 9*

evidence in the record to support Ms. Berry's contention that she is incapable of working a minimum wage, part time job to contribute to the family's income.

While Debtors' income alone shows that they cannot establish prong one, their expenses are also excessive. Courts have cautioned that debtor's expenses should be closely scrutinized when their financial situation is such that they make more than the median income for their area. *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 327 (4th Cir. 2008). In 2014, the Debtors made $77,590, approximately *twice* the median household family income for families in Crook County, Oregon between 2009 and 2013: $38,795.[6] Further, they made nearly *five times* the federal poverty level for a family of two: $15,930.[7]

One only need to glance at the Berrys' actual expenses to see that their lifestyle – while ignoring student loan obligations – far exceeds the "minimal standard of living" required under *Brunner*. For example, the Berrys spend over $300 per month on discretionary, non-essential goods such as Kindle purchases and gifts; over $300 per month on a cell phone plan that includes 9 lines for adult children; over $100 on pets; and cable or dish subscription in addition to internet and a Netflix subscription. Under these facts, the Berrys' case fails at prong one.

**(b) Prong Two: The Debtors Cannot Demonstrate that an Inability to repay their ECMC Debt is Likely to Persist for a Significant Portion of the Repayment Period.**

Only where a debtor is able to meet the requirements under the first prong of the *Brunner* test, should a court examine the other two *Brunner* requirements. *Pa. Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 496 (9th Cir. B.A.P. 2002). Although this claim of undue hardship can properly be denied based solely on Debtors' inability to establish the first *Brunner* prong, consideration of the remaining prongs further establishes that requiring the Berrys to repay their ECMC Debt will not impose an undue hardship.

---

[6] http://quickfacts.census.gov/qfd/states/41/41013.html

[7] http://aspe.hhs.gov/poverty/15poverty.cfm. 2015 Poverty Guidelines state the guideline for a family of 2 is $15,930 and a family of 4 is $24,250. Although the Berrys will argue that they have a family of four, they admitted in their deposition that none of their grandchildren or adult children are their dependents.

Page 10 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eleventh floor
121 s.w. morrison street
portland, oregon 97204-3141
503 228 3939

Case 14-03024-rld    Doc 42    Filed 04/08/15

The second *Brunner* prong requires a debtor to prove that additional circumstances exist indicating an inability to maintain a minimal standard of living while repaying student loans is likely to persist for a significant portion of the repayment period of the student loans. *Brunner*, 831 F.2d at 396. The determinative question in analyzing the "additional circumstances" prong is "whether the debtor's inability to pay will . . . persist throughout a substantial portion of the loan's repayment period." *Educ. Credit Mgmt. Corp. v. Nys* (*In re Nys*) 446 F.3d 938, 946 (9th Cir. 2006). Further, the debtor must demonstrate that any purported "additional circumstances" are *insurmountable*. *Id.*

The "additional circumstances" prong is intended to make the discharge of student loans more difficult than the discharge of other debt by requiring a debtor to show that he or she will not be able to maintain a minimal standard of living now and in the future if forced to repay the student loans. *Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001); *Nys*, 446 F.3d 938, 946. Under this second *Brunner* test element, a debtor may not choose purposely to live a lifestyle that prevents her or him from repaying the loans. *Nys*, 446 F.3d 938, 946. "Additional circumstances" that may demonstrate a debtor's future inability to repay student loans generally include: a serious mental or physical disability that prevents employment or advancement, lack of or severely limited education, poor quality of education, a limited number of years remaining in a debtor's work life to allow payment of the loan, and potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets or likely increases in the debtor's income. *Id.* In other words, the debtor must produce evidence of "insurmountable" barriers to her ability to repay her student loans. *Id.*

The Berrys only argument is that Ms. Berry cannot return to work given her medical conditions and the lack of job opportunities in Prineville, Oregon. However, the Berrys have not produced reliable evidence that either of these facts is true or is likely to persist for a significant portion of the repayment period. The only evidence submitted is hearsay documents created by the debtors showing the gross amount of certain medical expenses without taking into account insurance contributions or causes of the medical expenses. Ms. Berry's age is not an "additional circumstance" under the second prong of the *Brunner* test. *In re Chapelle,* 328 B.R. 565, 572 (Bankr. C.D. Cal.

Page 11 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

Case 14-03024-rld    Doc 42    Filed 04/08/15

2005) (age and amount of the loan coupled with the repayment period was not an "additional circumstance" under the *Brunner* analysis when a 52 year old debtor "chose to take out a student loan, later in life, with a 30-year repayment period" and "has at least 13 years before she is eligible for retirement benefits, and therefore, has over a decade to remain an active and productive member of the work force.").

### (c) Prong Three: The Debtors Cannot Establish a Good Faith Effort to Repay Their ECMC Debt

The final prong of the *Brunner* test requires a debtor to show that he or she has made good faith efforts to repay the student loan debt. *Brunner*, 831 F.2d at 396. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." *Birrane,* 287 B.R. at 499 (citations omitted). Moreover, in analyzing the good faith element, courts consider "[a] debtor's effort—or lack thereof—to negotiate a repayment plan," including the IBR. *See also Mason v. Educ. Credit Mgmt. Corp. (In re Mason)*, 464 F.3d 878, 884 (9th Cir. 2006) (holding that the debtor failed the good faith prong, in part, because of his failure to pursue an income contingent repayment plan diligently); *Tirch v. Pa. Higher Educ. Assistance Agency (In re Tirch),* 409 F.3d 677, 682 (6th Cir. 2005) (debtors who decline an income contingent repayment program have difficult time convincing court to discharge their student loan debt); *United States Dep't of Educ. v. Wallace*, 259 B.R. 170 (Bankr. C.D. Cal. 2000) (debtor acted in bad faith by "abjectly refus[ing] to take advantage of available repayment options"). A debtor, to prove good faith, must present evidence demonstrating his or her efforts to pursue an income-contingent payment plan and why such efforts were unfeasible. *Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 326 (4th Cir. 2008). Finally, failing to use financial surpluses for the purpose of paying down student loan debt exhibits a lack of good faith. *Mosko*, 515 F.3d at 326 ("The Moskos' failure to make payments during their budgetary surplus from 2004 until March 2005 does not demonstrate good faith").

Here, the Debtors fail the "good faith" prong for numerous reasons. First, they have made a deliberate lifestyle choice that limits their income—that is, choosing to have a single working

Page 12 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eleventh floor*
*121 s.w. morrison street*
*portland, oregon 97204-3141*
*503 228 3939*

Case 14-03024-rld    Doc 42    Filed 04/08/15

member of the family.  Further, the Debtors have refused to consider generous student loan repayment options, such as the income contingent or income based options—which could limit their monthly payments significantly. Finally, the Debtors made voluntary choices to dedicate their surplus income to items besides paying back their student loans: supporting children and grandchildren, nonessential purchases such as Amazon/Kindle and gifts, and television and movie subscriptions. Given this the Debtors also cannot carry their final burden of proving prong three.

## IV.    CONCLUSION

Ms. Berry is living a comfortable lifestyle far above the "minimal standard of living" she must prove in order to discharge her student loans.  The circumstances presented by the Berrys are a far cry from the minimal lifestyles of other debtors who still were unable to establish all three prongs of *Brunner*.  *See, e. g., Alderete*, 412 F.3d at 1203, 1206 (no undue hardship on debt of $ 78,000 for debtors with three children and low-paying jobs); *Oyler*, 397 F.3d at 384, 386 (no undue hardship on debt of $ 40,000 for debtors with three children and $ 10,000 annual income over last two years); *Brightful*, 267 F.3d at 326, 329-31 (no undue hardship for debtor who had one dependent, even though she was forced to live with her sister, had no college degree, and was "emotionally unstable" with "glaring psychiatric problems"). Therefore, ECMC request this Court to find that Ms. Berry's student loan debts are non-dischargeable in full.

DATED this 7th day of April, 2015.

GARVEY SCHUBERT BARER

By *s/ Eryn Karpinski Hoerster*
Eryn Karpinski Hoerster, OSB # 106126
Telephone:  (503) 228-3939
Fax:  (503) 226-0259
E-Mail:  ehoerster@gsblaw.com

GSB:6990292.1

Page 13 - **TRIAL MEMORANDUM**

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eleventh floor
121 s.w. morrison street
portland, oregon  97204-3141
503 228 3939

Case 14-03024-rld    Doc 42    Filed 04/08/15

# CERTIFICATE OF SERVICE

I, Eryn Karpinski Hoerster, hereby certify on April 8, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which, pursuant to Local Rule 5005-1(c)(1), causes parties who are registered ECF participants to be served by electronic means. I also served a copy of the foregoing document via U.S. Mail and E-mail on:

> Mark and Valerie Berry
> 1502 N.W. Studebaker Drive
> Prineville, OR 97754
> Email: markberry68@gmail.com

Dated this 8th day of April, 2015, at Portland, OR.

>             GARVEY SCHUBERT BARER
>
> By: *s/ Eryn Karpinski Hoerster*
>     Eryn Karpinski Hoerster, OSB #106126
>     Garvey Schubert Barer
>     121 SW Morrison St., 11th Floor
>     Portland, Oregon 97204-3141
>     Telephone: (503) 228-3939
>     Fax: (503) 226-0259
>     E-Mail: ehoerster@gsblaw.com
>
>     Attorneys for Educational Credit Management Corporation